IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SEARS PETROLEUM & TRANSPORT
 CORP., *et al.*,

                    Plaintiffs,

                                              Civ. Action No.
                                              5:03-CV-1120 (DEP)

          vs.

ARCHER DANIELS MIDLAND COMPANY,
 *et al.*,

                    Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFFS:

LATHROP, GAGE LAW FIRM          WILLIAM R. HANSEN, ESQ.
230 Park Avenue                 BERNADETTE REILLY, ESQ.
Suite 1847
New York, NY  10169

DUANE, MORRIS LAW FIRM          JOHN DELLAPORTAS, ESQ.
380 Lexington Avenue
New York, NY  10168

WALL, MARJAMA LAW FIRM          INDRANIL MUKERJI, ESQ.
101 South Salina Street
Suite 400
Syracuse, NY  13202

FOR ADM DEFENDANTS:

KIRKPATRICK & LOCKHART, LLP      TARA C. CLANCY, ESQ.
599 Lexington Ave.               CHRIS CENTURELLI, ESQ.
New York, NY  10022-6030

HISCOCK & BARCLAY, LLP          JOHN D. COOK, ESQ.
Financial Plaza                 ROBERT A. BARRER, ESQ.
221 South Warren Street
Syracuse, NY  13221-4878

FOR DEFENDANT MLI:

HEDMAN, COSTIGAN LAW FIRM       JOHN F. VOLPE, ESQ.
1185 Avenue of the Americas
20th Floor
New York, NY  10036-2646

DEVORSETZ, STINZIANO LAW FIRM   TIMOTHY LAMBRECHT, ESQ.
555 East Genesee Street
Syracuse, NY  13202-2159

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

On January 17, 2006 I issued an order which, *inter alia*, effectuated

dismissal of a cause of action asserted by plaintiffs Sears Petroleum and

Transport Corp. ("Sears Petroleum") and Sears Ecological Applications

Co., LLC ("SEACO") (collectively "Sears") alleging unfair competition

under New York common law.  That determination was based upon

plaintiffs' failure to allege the necessary misappropriation of labor, skill

and expenditures required to support such a cause of action.

Plaintiffs now seek reconsideration of my prior order, asserting that

under New York law an unfair competition claim may be based upon fraud

or misrepresentation without the additional requirement that a

2

misappropriation also be proven.  For the reasons set forth below

plaintiffs' motion, which is opposed by all defendants, is denied.

I.      BACKGROUND

Central to the infringement claims in this action are two separate

patents, United States Patent No. 6,299,793 (the "'793 Patent") entitled

"Deicing Solution", issued on October 9, 2001 and assigned to Sears

Petroleum, and United States Patent No. 6,582,622 (the "'622 Patent")

also entitled "De-icing Solution", issued on June 24, 2003 to Sears

Petroleum.  Those patents grow out of development by Sears and one of

its principals, David Wood, with the aid of Robert Hartley, a Canadian

chemist retained to assist them, of an improved roadway de-icing agent

lacking certain undesirable characteristics linked to previously available

commercial products, many of which were derived from agricultural

wastes and residues.

At some time in or prior to October of 2001, Sears became aware of

efforts to market a CALIBER brand of de-icing products which included,

as constituents, an aqueous solution comprised of corn syrup and

magnesium chloride.  Following issuance of the '793 patent, Sears

directed its counsel to contact defendant Minnesota Corn Products

("MCP"), an entity allegedly involved, together with Glacial Technologies

("GT"), also a defendant in the case, in development of the CALIBER

product to advise it of the issuance of the '793 patent and its belief that

the CALIBER product infringed the claims of that patent.[1]  MCP

responded by letter dated October 30, 2001 from its patent counsel,

outlining its position that the '793 patent claims do not cover the CALIBER

product, and that in any event the '793 patent claims are invalid.

Following unsuccessful efforts to negotiate a license under the '793 patent

with MCP and its affiliate, GT, for their CALIBER products and an

agreement to jointly market CALIBER and SEACO's ICE-BE-GONE II

product, and upon learning that GT was planning to introduce CALIBER

into the New England market, Sears filed suit alleging defendants'

infringement of the '793 and '622 patents.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiffs commenced this action on September 12, 2003, and on

November 3, 2003 filed an amended complaint as a matter of right.  Dkt.

Nos. 1, 5.  In their complaint, as amended, plaintiffs have named several

defendants including 1) ADM, a Delaware corporation with its principal

place of business in Decatur, Illinois; 2) MCP, a Minnesota corporation

with a principal place of business in Marshall, Minnesota; 3) Deicer USA,

---

[1]      According to plaintiffs' amended complaint, MCP merged into defendant
Archer Daniels Midland Company ("ADM") in September of 2002.

LLC ("DUSA"), a Minnesota limited liability company with a principal place of business in Decatur, Illinois, and alleged to be an affiliate of ADM; 4) MLI, an Ohio limited liability company with its principal place of business in Columbus, Ohio; and 5) GT, an Ohio limited liability company with a principal place of business in Melvern, Ohio, and alleged to constitute a joint venture between DUSA and MLI.

On December 6, 2005 the ADM defendants moved seeking dismissal of two counts of plaintiffs' second amended complaint, filed on November 14, 2005, Dkt. No. 73, including their third cause of action, alleging fraudulent misrepresentation, and fourth claim, alleging unfair competition.  Dkt. No. 91.  Defendant MLI later joined in that motion.  Dkt. No. 92.  Following the filing of opposition by the plaintiffs on December 27, 2005, Dkt. No. 96, I conducted a hearing on January 11, 2006 to address the motions.[2]  At the close of the hearing a bench decision was rendered disposing of the motions; that bench decision was later memorialized in an order issued on January 17, 2006.  Dkt. No. 100.  In that order I granted dismissal of plaintiff's third cause of action, alleging fraudulent misrepresentation, as against defendant MLI, but denied the ADM defendants' motion to dismiss that claim as against them.  *Id.*

---

[2]     This action is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c).  *See* Dkt. No. 51.

Defendants' motion to dismiss plaintiffs' claim for unfair competition was granted in all respects.  *Id.*

On January 27, 2006 plaintiffs timely moved for reconsideration of the portion of that order directing dismissal of Sears' unfair competition cause of action.  Dkt. No. 110.  Opposition to that motion has been filed on behalf of the ADM defendants, Dkt. No. 121, as well as by defendant MLI.  Dkt. No. 122.  The Sears parties have subsequently replied by memorandum further supporting their request for reinstatement of the unfair competition claim and addressing the arguments raised in opposition to their motion.  Dkt. No. 127.

III.   DISCUSSION

A.    Governing Standard

Plaintiffs' motion implicates both Rule 60(b) of the Federal Rules of Civil Procedure and Northern District of New York Local Rule 7.1(g).[3]  In

---

[3]     Rule 60(b) directly addresses the standard to be applied when relief from a final judgment or order is sought, and provides in relevant part that

> [o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or

this district, reconsideration of an order entered by the court is appropriate

upon a showing of "(1) an intervening change in controlling law, (2) the

availability of new evidence not previously available, or (3) the need to

correct a clear error of law or prevent manifest injustice." *In re C-TC 9th*

*Ave. P'ship*, 182 B.R.1, 3 (N.D.N.Y. 1995) (McAvoy, C.J.); *see also*

*Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 244

(N.D.N.Y. 2002) (McCurn, S.J.) (citing *Sumner v. McCall*, 103 F. Supp. 2d

555, 558 (N.D.N.Y. 2000) (Kahn, J.)).  Applications for reconsideration are

also subject to an overarching "clearly erroneous" gauge.  *Sumner*, 103 F.

Supp. 2d at 558.

　　　The required benchmark for seeking reconsideration of a court's

order has been described as "demanding[.]"  *Id.*  A motion for

reconsideration is not a vehicle through which a losing party may raise

arguments that could have been presented earlier but for neglect, nor is it

a device "'intended to give an unhappy litigant one additional chance to

sway the judge.'"  *Brown v. City of Oneonta, New York*, 858 F. Supp. 340,

---

　　　　　　　otherwise vacated, or it is no longer equitable that the
　　　　　　　judgment should have prospective application; or (6) any
　　　　　　　other reason justifying relief from the operation of the
　　　　　　　 judgment[.]

Fed. R. Civ. P. 60(b).  Local Rule 7.1(g), on the other hand, merely details a procedure
to govern motions for reconsideration, without prescribing a standard for determining
such applications.  N.D.N.Y.L.R. 7.1(g).

342 (N.D.N.Y. 1994) (McAvoy, C.J.) (quoting *Durkin v. Taylor*, 444 F.

Supp. 879, 889 (E.D.Va. 1977)).  To qualify for reconsideration, "[t]he

moving party [must] point to controlling decisions or data that the court

overlooked – matters, in other words, that might reasonably be expected

to alter the conclusion reached by the court."  *Shrader v. CSX Transp.,

Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995) (citations omitted).

    B.    Unfair Competition

    The tort of unfair competition, as governed by New York law, has

been variously characterized as addressing "the 'incalculable variety' of

illegal practices falling within the unfair competition rubric, . . . a 'broad

and flexible doctrine' that depends 'more upon the facts set forth. . . than

in most causes of action,'. . . [and] broadly described as encompassing

'any form of commercial immorality[.]'"  *Roy Export Co. Establishment of

Vaduz, Liechtenstein v. Columbia Broadcasting System, Inc.*, 672 F.2d

1095, 1105 (2d Cir. 1982) (quoting, *inter alia*, *Ronson Art Metal Works,

Inc. v. Gibson Lighter Mfg. Co.*, 3 A.D.2d 227, 230-31, 159 N.Y.S.2d 606,

609 (1st Dept. 1957) and *Metropolitan Opera Ass'n v. Wagner-Nichols

Recorder Corp.*, 199 Misc. 786, 792, 796, 101 N.Y.S.2d 483, 488, 489,

492 (N.Y. Co. Sup. Ct. 1950), *aff'd mem,* 279 A.D.2d 632, 107 N.Y.S.2d

795 (1st Dept. 1951).  While the Second Circuit has noted that "[t]he tort is

8

adaptable and capacious", it has also acknowledged the susceptibility of

"such an amorphous cause of action" to "mischievous application[.]" *Roy*

*Export*, 672 F.2d at 1105.

The contours of the tort of unfair competition in New York are

unquestionably amorphous.  One judge of this court has described the

cause of action by observing that

> [u]nder New York law, "the gravamen of a claim of
> unfair competition is the bad faith misappropriation
> of a commercial advantage belonging to another
> by infringement or dilution of a trademark or trade
> name or by exploitation of proprietary information
> or trade secrets."  The essence of an unfair
> competition claim is that one may not
> misappropriate the results of the labor, skills and
> expenditures of another[.]

*Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, 297 F. Supp.2d 463, 491

(N.D.N.Y. 2003) (Munson, S.J.) (internal citations omitted); *see also*

*Innoviant Pharmacy, Inc. v. Morgenstern*, 390 F. Supp.2d 179, 194

(N.D.N.Y. 2005) (citing *Norbrook*).  The breadth of the tort and its potential

for applicability in a variety of settings is readily apparent from this

description of its elements.  Yet, despite its expansivity, the tort of unfair

competition is not implicated in every instance of disgraceful business

behavior.  *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys.,*

*Inc.*, 879 F.2d 1005, 1024-25 (2d Cir. 1989); *Ruder & Finn Inc. v.*

*Seaboard Surety Co.*, 52 N.Y.2d 663, 670-72, 422 N.E.2d 518, 522, 439 N.Y.S.2d 858, 862 (1981).

In their second amended complaint, plaintiffs allege that by disingenuously engaging in continuing negotiations for a joint marketing arrangement with Sears, with no intention of entering into such an arrangement, "while secretly attempting to provoke an interference of the '793 Patent" and causing Sears to assist them the introduction of their CALIBER brand road deicers, the defendants committed the tort of unfair competition.  *See* Second Amended Complaint (Dkt. No. 73) ¶¶ 50-53.  I ordered dismissal of that cause of action based upon plaintiffs' failure to allege defendants' misappropriation of Sears' commercial advantage in the sense contemplated by the New York common law of unfair competition.

In an effort to revitalize their unfair competition claim plaintiffs cite several cases which, they maintain, eliminate the need to prove a misappropriation in order to sustain an unfair competition claim, and instead suggest that mere misappropriation and/or fraud, in and of itself, may suffice to establish such a cause of action.  Those cases,  however, are either inapposite or do not stand for the proposition noted.

One of the cases advanced by the plaintiffs in their motion for

reconsideration is *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005 (2d Cir. 1989).  While Sears asserts that in that case the Second Circuit held that *either* deception or misappropriation would suffice to support a cause of action for unfair competition, a careful reading of that decision reveals that this is not the case.  Rather, in making the statement attributed by the plaintiffs to that court the Second Circuit was merely reciting the basis for the lower court's decision under scrutiny in that appeal, in which it had rejected an unfair competition counterclaim asserted by the defendant.  *Id.* at 1025.  Nowhere in its decision in *H.L. Hayden* does the Second Circuit ratify this statement as being consistent with the New York law of unfair competition.

Similarly the Second Circuit's passing reference in *Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962), to the effect that "[c]ommon law unfair competition must be grounded in either deception or appropriation of the exclusive property of the plaintiff", represents mere dicta and was neither stated as a holding nor even expanded upon by the court in the decision in that case.  *See id.* at 36.  Significantly, the discussion which follows that statement reflects that the court's focus was upon whether property, tangible or intangible, was misappropriated, or

11

"pirat[ed]," lending support to the defendants' position that some degree of misappropriation is required in order to sustain an unfair competition claim. *Id.*

It is true that the court's decision in *NYC Management Group Inc. v. Brown-Miller*, 03 Civ. 2617, 2004 U.S. Dist. LEXIS 8652, at *30 (S.D.N.Y. May 13, 2004) appears to support plaintiffs' argument.  That decision, however, merely reiterates and quotes the Second Circuit's decision in *H.L. Hayden Co.* which, as I have already noted, did not hold that a misappropriation was not required to support an unfair competition claim in New York, but rather merely recited the basis for the district court's findings without endorsing this expansion of New York law.  For this reason, I respectfully decline to follow *NYC Management Group* to the extent that it may be viewed as supportive of plaintiffs' argument.

As has been stated, in New York the tort of unfair competition is comprised of two distinct elements, one addressing the misappropriation of property or commercial advantage and the second focusing upon the manner of the misappropriation.  It is the second element that admits of expansive and varied definitions.  That plaintiffs have seized upon the elasticity of this second element, losing sight of the misappropriation requirement, rings clear from their reliance upon such cases as *Dior v.*

*Milton*, 9 Misc.2d 425, 155 N.Y.S.2d 443 (N.Y. Co. Sup. Ct. 1956).  There,

addressing the unfairness element, the court concluded that it could be

satisfied in a variety of ways including by a showing of fraudulent

representations.  9 Misc.2d at 436-37, 155 N.Y.S.2d at 457.  Significantly,

earlier in its decision in that case the court had reinforced that the law of

unfair competition required "some property rights in the plaintiffs and

interference with and misappropriation of them by defendants" as

"necessary to [an unfair competition] cause of action."  *Id.* at 435, 155

N.Y.S.2d at 456.

　　The case principally relied upon by the plaintiffs in support of their

request for reconsideration is *Montegut v. Hickson, Inc.*, 178 A.D. 94, 164

N.Y.S. 858 (1st Dept. 1917).  In that action a five member panel of the

First Department of the New York State Supreme Court, Appellate

Division, over the strong dissent of two justices, affirmed a lower court

finding of unfair competition based upon facts suggesting that the

defendants had obtained products, in this case "high grade" dresses,

purchased from the plaintiff by someone under the guise of being bought

for private use.  *Id.* at 96-97, 164 N.Y.S. at 859-60.  The gowns were

thereafter delivered to the defendant which, after removing identifying

labels, proceeded to sell them as its own product.  *Id.* at 96, 164 N.Y.S. at

859.  The court concluded that the defendant had obtained possession of plaintiff's "exclusive artistic creations" by fraud and deception, and had represented them as their own, thereby misappropriating trade which otherwise would have been enjoyed by the plaintiffs.  *Id.*  Under these circumstances, then, the showing of fraud and deception was in fact accompanied by a corresponding, and required, misappropriation, thus supporting defendants' position.

In sum, as one court has noted, the essence of an unfair competition claim is that "one may not misappropriate the results of the labor, skill, and expenditures of another[.]"  *Link Co., Inc. v. Fujitsu Ltd.*, 230 F. Supp.2d 492, 500 (S.D.N.Y. 2002).  Because the plaintiffs in this case have failed to allege the requisite misappropriation necessary to support a claim of unfair competition, I decline their request for reconsideration of my prior order.

III.   SUMMARY AND ORDER

Plaintiffs' motion for reconsideration calls upon this court to review its prior order and determine whether there is a need to correct a clear error of law or prevent manifest and justice.  Finding no reason to conclude that such has occurred, I deny their request for reconsideration. It is therefore hereby

14

ORDERED, that plaintiff's motion for reconsideration (Dkt. No. 110)

is DENIED in all respects.

Dated:      May 9, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\Civil\2003\03-CV-1120\order7.wpd